**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| YOMEE TOYS (SHUYANG) CO., LTD<br><br>    Plaintiff,<br><br>v.<br><br>SHENZHEN MEISHANG BAOKANG E-COMMERCE CO., LTD, d/b/a Jalunth and DOES 1-50, inclusive,<br><br>    Defendants. | Civil Action No.: 1:21-cv-03939 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'**
***EX PARTE* MOTION FOR ENTRY OF A (1) TEMPORARY RESTRAINING ORDER,**
**(2) ASSET RESTRAINING ORDER, (3) EXPEDITED DISCOVERY ORDER AND (4)**
**SERVICE OF PROCESS BY ELECTRONIC MEANS ORDER**

Plaintiff Yomee Toys (Shuyang) Co., Ltd, by and through undersigned counsel herein, hereby submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order, Asset Restraining Order, Expedited Discovery Order, and Service of Process by Electronic Means Order (the "*Ex Parte* Motion").

Dated: August 6, 2021

                                        /s/ Edward Chen
                                        Edward Chen (CA Bar No. 312553)
                                        YK Law LLP
                                        125 South Wacker Dr. Suite 300
                                        Chicago, Illinois 60606
                                        (213) 401-0970
                                        echen@yklaw.us

                                        *Attorneys For Plaintiff*
                                        *Yomee Toys (Shuyang) Co., Ltd*

## TABLE OF CONTENTS

I.  **INTRODUCTION** ...................................................................................................1

II. **STATEMENT OF FACTS** ....................................................................................3

    I.  Plaintiff's Trade Dress and Copyrights .............................................................3

    II. Defendants' Illegal Activities ...........................................................................4

III. **ARGUMENT** .........................................................................................................6

    I.  Standard for Temporary Restraining Order and Preliminary Injunction .................7

    II. Plaintiff Will Likely Succeed on the Merits ......................................................8

        I.  Plaintiff Is Likely to Succeed on Its Trade Dress Infringement Claim...... 8

            1.  Plaintiff's trade dress is valid because it has developed a secondary meaning ..................................................................................9

            2.  Plaintiff's trade dress is non-functional ..................................10

            3.  Consumers are likely to be confused ......................................13

        II. Plaintiff Is Likely to Succeed on Its False Designation of Origin Claim ....16

        III. Plaintiff Is Likely to Succeed on its Illinois Uniform Deceptive Trade Practice Act (UDTPA) Claim ................................................16

        IV. Plaintiff Is Likely to Succeed on its Copyright Infringement Claim...........17

    III. There Is No Adequate Remedy at Law and Plaintiff Is Likely to Suffer Irreparable Harm in the Absence of The Injunctive Relief.......................................................18

    IV. The Balancing of Harms Tips in Plaintiff's Favor................................................19

    V.  Issuance of the Injunction is in the Public Interest................................................20

IV. **THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE** .....................................21

I.      A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Illegal Use of Plaintiff's Trade Dress and Copyright Is Appropriate ............................................................................................21

II.     An Order Preventing the Fraudulent Transfer of Assets Is Appropriate ...............22

III.    Plaintiff Is Entitled to Expedited Discovery ...........................................................23

IV.     Service of Process by Electronic Means Is Warranted in this Case ....................24

**V.      A BOND SHOULD SECURE THE INJUNCTIVE RELIEF .......................................27**

**VI.     CONCLUSION .....................................................................................................28**

## **TABLE OF AUTHORITIES**

**Federal Cases**

*Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6 (7th Cir. 1992) ............................................8

*Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665 (N.D. Ill. 1998) .........................16

*AM Gen. Corp. v. DaimlerChrysler Corp.,* 311 F.3d 796, 805, 831-32 (7th Cir. 2002) ............18

*Arlington Specialties, Inc. v. Urban Aid,* Inc., 847 F.3d 415 (7th Cir. 2017) ....................9,11

*Atari, Inc. v. North Am. Phillips Consumer Elecs. Corp.*, 672 F.2d 607 (7th Cir. 1982) .............17

*Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145 (7th Cir. 1994) ……………………*passim*

*Banister v. Firestone*, No. 17 C 8940, 2018 WL 4224444 (N.D. Ill. Sept. 5, 2018) ............... 23

*Bodum USA, Inc. v. A Top New Casting Inc.*, 927 F.3d 486 (7th Cir. 2019) .....................*passim*

*Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) ..................................20

*Christian Dior Couture, S.A. v. Lei Liu, et al.*, 2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015) ................................................................................................................................7

*Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075 (N.D. Ill. 1996) ......................7, 22

*CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) .....................................................22

*Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 13 C 07621, 2013 WL 12314399 (N.D. Ill. Oct. 31, 2013) .....................................................23, 24

*Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456 (7th Cir. 2000) ....................................20

*Entm't One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 947 (N.D. Ill. 2019) .....................22

*Feist Publications, Inc. v. Rural Tel. Serv.*, 499 U.S. 340, 361(1991) .....................17

*Gianni Versace, S.P.A. v. Yong Peng, et al.*, No. 18-cv-5385 (N.D. Ill. Feb. 27, 2019) .......26

*Grupo Mexicano de Desarrollo, S. A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) .........22

*Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325 (7th Cir. 1977) ...18

*Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018 (7th Cir. 1979) .................................18

*In re Potash Antitrust Litig.,* 667 F. Supp. 2d 930 (N.D. Ill. 2009) ..............................................26

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc*, 846 F.2d 1079 (7th Cir.1988) ..........8, 18

*Incredible Techs., Inc. v. Virtual Techs.,* Inc., 400 F.3d 1007 (7th Cir. 2005) ..........................9

*Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994) ......................20

*KJ Korea, Inc. v. Health Korea, Inc.*, 66 F. Supp. 3d 1005 (N.D. Ill. 2014) ........................13, 14

*Levi Strauss & Co., v. Zhejiang Weidu Garment Co., Ltd., et al.,* No. 16-cv- 7824 (N.D. Ill. Nov. 17, 2016) ........................................................................................................................26

*Logan Graphic Prod., Inc. v. Textus USA, Inc.*, No. 02 C 1823, 2003 WL 21011746 (N.D. Ill. May 5, 2003) ........................................................................................................................10, 12

*Long v. Bd. of Educ., Dist. 128*, 167 F. Supp. 2d 988 (N.D. Ill. 2001) ........................................8

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473 (D.D.C. 1996) ........................................................................................................................20

*Nagravision SA v. Gotech Int'l Tech. Ltd.*, 2018 U.S. App. LEXIS 2976 (5th Cir. 2018) ...........26

*Neopost Industrie B.V. v. PFE International, Inc.,* 403 F. Supp. 2d 669 (N.D. Ill. 2005) ...........16

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978) .........................................................23

*Packman v. Chicago Tribune Co.*, 267 F.3d 628 (7th Cir. 2001) .................................................13

*Pickett v. Prince*, 52 F.Supp.2d 893, 900–01 (N.D. Ill. 1999) ....................................................17

*Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) .......................18

*Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159 (1995) .........................................................9

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) ...................................25, 26

*Scherr v. Volpe*, 466 F.2d 1027 (7th Cir. 1972) ..........................................................................27

*Specialized Seating, Inc. v. Greenwich Indus., LP*, 616 F.3d 722 (7th Cir. 2010) .......................10

*Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567 (N.D. Ill. 1994) .................................................16

*Strabala v. Zhang*, 318 F.R.D. 81 (N.D. Ill. 2016) ............................................................ 26, 27

*Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277 (7th Cir. 1998) .....................................9

*Top Tobacco v. Fantasia Distribution Inc.*, 101 F. Supp. 3d 783 (N.D. Ill. 2015) .......................13

*TraFix Devices, Inc. v. Mktg. Displays, Inc.,* 532 U.S. 23 (2001) ..................................................10

*Uncommon, LLC v. Spigen, Inc.,* 926 F.3d 409 (7th Cir. 2019) ......................................................9

*USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427 (N.D. Ill. 2019) ......................................................................................................................................7

*Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812 (N.D. Ill. Dec. 21, 2007) ..............23

*Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202 (7th Cir. 1990) ...................16

**Federal Statutes**

11 U.S.C. § 1125 ...................................................................................................................8, 13, 16

15 U.S.C. § 1051 ..............................................................................................................................7

15 U.S.C. § 1116 ............................................................................................................................21

15 U.S.C. § 1117 ............................................................................................................................23

17 U.S.C. § 101 ..........................................................................................................................7, 17

17 U.S.C. § 410(c). .......................................................................................................................17

17 U.S. Code § 502..........................................................................................................................21

17 U.S. Code § 504..........................................................................................................................23

28 U.S.C. 1331 ..................................................................................................................................7

28 U.S.C. § 1338 ..............................................................................................................................7

28 U.S.C. § 1367(a) ..........................................................................................................................7

28 U.S.C. § 1391 ..............................................................................................................................7

**Federal Rules**

Fed. R. Civ. P. 4 ........................................................................................... 24-26

Fed. R. Civ. P. 26 ............................................................................................ 26

Fed. R. Civ. P. 65 ........................................................................................ 6, 21, 27

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I. INTRODUCTION

Plaintiff Yomee Toys (Shuyang) Co., Ltd ("Plaintiff") brings this action against Defendant Shenzhen Meishang Baokang E-Commerce Co., Ltd, d/b/a Jalunth, and Does 1-50, inclusive, (collectively, "Defendants") for claims including federal trade dress infringement (Count I), false designation of origin (Count II), violations of the Illinois UDTPA (Count III); and federal copyright infringement (Count IV). As alleged in the Complaint, Defendants have blatantly misappropriated Plaintiff's protectable trade dress and copyright in connection with their sale and/or offering for sale of low-quality competing products on Amazon.com under fictitious sellers' name. Plaintiff is forced to file this action to combat Defendants' continued infringement of its trade dress and copyright as well as to protect unknowing consumers from purchasing illegitimate low-quality products over the Internet.

Plaintiff owns and operates the Amazon storefront account Everich Toy. Plaintiff is a China-based company that engages in the development, manufacture, and sale of outdoor game products. The infringing trade dress in question is Plaintiff's celebrated EVERICH TOY toss and catch game set, which include the following striking features: the distinctive contrasting and non-monochrome coloring of the paddles and soft balls, the unique cross-shaped stitching on the pads, and the upside-down pear-shaped transparent bag with EVERICH positioned on the top middle of the bag.



1

Plaintiff has spent a significant amount of time, resources, and efforts in designing, creating, marketing and selling the EVERICH TOY toss and catch game set, subject to rigorous quality control standards. Thanks to these efforts, the EVERICH TOY toss and catch game set has enjoyed massive success including valuable consumer goodwill. The design and features of the products have received widespread public attention and have become well-known indicators of the origin and quality of Plaintiff's products.

Unfortunately, Defendants have misappropriated Plaintiff's hard-earned goodwill by selling poor quality knock-offs that intentionally and unmistakably copy Plaintiff's products without permission and by using near-identical versions of Plaintiff's listing images. As a consequence of Defendants' unlawful activity, Plaintiff has suffered and continues to suffer from lost sales and diminished reputation and brand confidence in the marketplace, as consumers are confused into believing that Defendants' illegitimate products originates from or is otherwise associated with Plaintiff's products. Furthermore, the more the public is exposed to Defendants' illegitimate products, the less resonant and valuable will be Plaintiff's design of EVERICH TOY toss and catch game set in functioning as indicia of product source as coming from Plaintiff.

Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores through which Illinois residents can purchase knockoffs. Upon information and belief, Defendants are part of an illegal network of manufacturers and sellers involved in the manufacturing and sales of infringing versions of Plaintiff's products. Defendants intentionally conceal their true identities and the full scope of their illegal operations by operating under various sellers' aliases. Furthermore, Plaintiff is informed and, on that basis, believes that Defendants are highly likely to move funds from their U.S. financial accounts to unknown and offshore bank

accounts outside the jurisdiction of this Court, and thereafter ignore the lawsuit and deny Plaintiff all means of redress without judicial intervention.

Given the apparent nature of intentional infringement, the clear resulting harm to Plaintiff's hard-earned goodwill and confusion to the public, and the fact that Defendants have gone to great lengths to avoid liabilities and enforcement efforts, Plaintiff respectfully request this court to issue *ex parte*: (1) a temporary restraining order against Defendants enjoining the manufacture, importation, distribution, offer for sale and sale of knockoffs and Defendants' use of Plaintiff's copyrighted photographs; (2) an order temporarily restricting transfer of Defendants' assets to preserve Plaintiff's rights to an equitable accounting; (3) an order for expedited discovery allowing Plaintiff to inspect and copy Defendants' records relating to the manufacture, distribution, offer for sale and sale of infringing products and Defendants' financial accounts; and (4) an order allowing service by electronic means.

## II.   FACTUAL BACKGROUND

### A.   EVERICH TOY Toss and Catch Game Set

Plaintiff is a company duly organized under the laws of People's Republic of China. (Declaration of Zhenhuan Gu ("Gu Decl.") ¶ 3.)  Plaintiff specializes in designing, developing, and marketing high-quality outdoor game sets, including the celebrated EVERICH TOY Toss and Catch Game Set which is sold throughout the U.S. through Plaintiff's Amazon storefront EVERICH TOY.  (*Id.* ¶ 4.)  The EVERICH TOY Toss and Catch Game Set is a high-quality game set with unique and distinctive designs, featuring contrasting and non-monochrome coloring of the paddles and soft balls, cross-shaped stitching on the pads, and the upside-down pear-shaped transparent bag with EVERICH positioned on the top middle of the bag. (*Id.* ¶ 5.)

The popularity and success of EVERICH TOY Toss and Catch Game Set among the consuming public is undeniable. To this date, Plaintiff has sold tens of thousands of units of the EVERICH TOY Toss and Catch Game Set. (*Id.* ¶ 17.) As an Amazon best-seller product, the EVERICH TOY Toss and Catch Game Set has been reviewed over 2,700 times on Amazon. (*Id.*) The success of the EVERICH TOY Toss and Catch Game Set stems from the significant amount of time, money, and effort that Plaintiff has expended to extensively and continuously promote and utilize EVERICH TOY Toss and Catch Game Set as a source-identifier in the United States and in Illinois since the product's launch. (*Id.* ¶ 15.) The distinctive look and feel of the EVERICH TOY Toss and Catch Game, in conjunction with Plaintiff's diligent advertising and marketing efforts in promoting and building its recognition in the marketplace, have facilitated the product's undeniable popularity and the resonance of the design with the consuming public at large and generated enormous goodwill in the EVERICH TOY Toss and Catch Game Set in the United States.

### B. Defendants' Illegal Activities

Plaintiff's products have become so popular among, sought after by, and recognizable as a brand by the public that competitors like defendants started selling unauthorized merchandise that unquestionably copy the EVERICH TOY Toss and Catch Game Set on Amazon.com. (*Id.* ¶ 20.) The similarities between Defendants' products and Plaintiff's Products are striking, as these products appear to be nearly identical. Exemplary images of an authentic and original EVERICH TOY Toss and Catch Game Set compared with one of the knock-off, counterfeited versions of Plaintiff's product can be seen as follows:

| Illustration 1: Exemplary images of Plaintiff's Legitimate Products[1] | Illustration 2: Exemplary Images of Defendants' knock-offs[2] |
|---|---|
|  |  |

As can be readily seen from the comparison, Defendants' products have precisely the same design elements as the EVERICH TOY Toss and Catch Game Set. Specifically, Defendants' products have the same distinctive contrasting and non-monochrome coloring of the paddles and the soft balls, the same unique cross-shaped stitching on the pads, and the same upside-down pear-shaped transparent bag with the brand name on the top middle of the bag, among other shared features. (*Id.*) These overlaps are remarkable and unmistaken given the limitless options available to design and manufacture a toss and catch game set.

Defendants also facilitate sales by using nearly identical copies of Plaintiff's copyrighted listings photos (United States Copyright Registration No. VA0002257606) on Defendant Internet Stores so that they appear to unknowing consumers to be the source of or otherwise authorized to sell Plaintiff's products. (*Id.* ¶ 21.) This, coupled with the fact that Defendants' products are

---

[1] EVERICH TOY Paddle Toss and Catch Ball Set. Everich Toy Amazon Online Store. (last visited May 20, 2021). (https://www.amazon.com/dp/B0832KK7CS)/

[2] JALUNTH Ball Catch Set Games Toss Paddle. Jalunth Amazon Online Store. (last visited May 20, 2021). (https://www.amazon.com/dp/B08BCJD3CQ).

counterfeited versions that closely imitate the distinctive designs of the EVERICH TOY Toss and Catch Game Set, create a possibility that Plaintiff's trade dress will no longer serve as a unique identifier of Plaintiff's products to consumers and therefore dilutes the brand.

Even worse, the inferior quality of Defendants' products could tarnish the reputation and goodwill that Plaintiff has worked very hard to develop, and on which Plaintiff has spent tens of thousands of dollars on marketing and advertising. Indeed, even though Defendants' products are intended to look and feel like Plaintiff's products, the quality of Defendants' products is vastly inferior. Amazon reviewers of Defendants' products have complained about the lack of quality control with respect to Defendants' products. (*Id.* ¶ 22.) As a result, Plaintiff has suffered and will continue to suffer from lost sales and foregone business because of the improper and negative associations between Plaintiff's brand and the inferior knockoffs.

## III.   ARGUMENT

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate in this case because it would immediately stop the Defendants from benefiting from their wrongful use of Plaintiff's trade dress and copyright, to prevent consumers from further confusion, and to preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new e-commerce stores under new aliases to continue their sales of infringing products and move any assets to offshore bank accounts outside the jurisdiction of this Court. (Declaration of Edward Chen ("Chen Decl") ¶ 3.) Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc.*

*v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers".) As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act, 17 U.S.C. § 101, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through operating or assisting in the operations and selling of infringing products through fully interactive online stores located on Amazon Marketplace. (Chen Decl. ¶ 2, Exhibit A, B and C.); *See, e.g., Christian Dior Couture, S.A. v. Lei Liu, et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendant offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required). Defendants are directly involved in the commission of tortious acts in Illinois, are engaging in interstate commerce, and have wrongfully caused Plaintiff substantial injury in the State of Illinois. (*Id.*)

### A. <u>Standard for Temporary Restraining Order and Preliminary Injunction</u>

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 n.5 (N.D. Ill. 2019) (citing *Long v. Bd.*

*of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001)). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*

**B.  Likelihood of Success on the Merits**

**1.  Plaintiff Is Likely to Succeed on Its Trade Dress Infringement Claims**

Plaintiff only needs to show that it has "some likelihood" of success on the merits. *Ty, Inc.* 237 F.3d at 896 (7th Cir. 2001) ("Initially, the court only needs to determine that the plaintiff has some likelihood of success on the merits.") This requires only a "better than negligible" chance of succeeding on the merits. *Id*. (quoting *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir.1988)).

The Lanham Act permits a civil action against any person who uses "any word, term, name, symbol, or device" "in connection with any goods or services" in a manner which "is likely to cause confusion" as to the source of those goods or services. 15 U.S.C. § 1125(a)(1)(A). The

8

Act's protection extends to a product's trade dress, which includes a product design that is so distinctive that it identifies the product's source. *Arlington Specialties, Inc. v. Urban Aid, Inc.*, 847 F.3d 415, 418 (7th Cir. 2017); *see also TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28 (2001) ("The design or packaging of a product may acquire a distinctiveness which serves to identify the product with its manufacturer or source; and a design or package which acquires this secondary meaning … is a trade dress[.]")   To prevail on a trade dress infringement claim, Plaintiff must establish that (1) the claimed trade dress has acquired secondary meaning, (2) the claimed trade dress is non-functional, and (3) a likelihood of confusion exists between the trade dress of the plaintiff and that of the defendant. " *Incredible Techs., Inc. v. Virtual Techs.*, Inc., 400 F.3d 1007, 1015 (7th Cir. 2005); *Bodum USA, Inc. v. A Top New Casting Inc.*, 927 F.3d 486, 491 (7th Cir. 2019).   As explained below, Plaintiff meets this test and is more than likely to prevail on the merits.

      1.   *Plaintiff's trade dress is valid because it has developed a secondary meaning.*

A trade dress acquires secondary meaning when, "in the minds of the public, the primary significance of a product feature ... is to identify the source of the product rather than the product itself." *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998) (alteration in original) (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 163 (1995)).  A plaintiff can establish secondary meaning "through direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market and proof of intentional copying." *Thomas & Betts*, 138 F.3d at 291 (internal quotation marks omitted); *see also Uncommon, LLC v. Spigen, Inc.,* 926 F.3d 409, 424 (7th Cir. 2019) (similar).

   Plaintiff has spent handsomely advertising and promoting the EVERICH TOY Toss and Game Set since its launch, including prominently displaying the product in conjunction with the

9

EVERICH brand. (Gu Decl. ¶ 15.) This product has also achieved widespread consumer recognition, as evidenced by the fact that Plaintiff has sold tens of thousands of units of such products, which is a best-seller on Amazon. (*Id.*) The EVERICH TOY Toss and Game Sets have consistently and continuously been sold in the marketplace, and they have always included the same features which embody the product's trade dress. (*Id.* ¶ 6.) It is those features and the consistency of their use that distinguishes the EVERICH TOY Toss and Game Set from competitor's products. Furthermore, as set forth above, that Defendants deliberately copied Plaintiff's trade dress is beyond question, which further bolsters the undeniable fact: Plaintiff possesses valid and protectable trade dress.

2. <u>*Plaintiff's trade dress is non-functional.*</u>

To be protectable, trade dress, *as a whole*, cannot be solely functional. *See Bodum*, 927 F.3d at 491. Functionality must be analyzed by reference to the overall combination and arrangement of the various features – not on the functionality of each of the individual features. *Badger Meter, Inc. v. Grinnell Corp*., 13 F.3d 1145, 1154; *Logan Graphic Prod., Inc. v. Textus USA, Inc.*, No. 02 C 1823, 2003 WL 21011746, at \*4 (N.D. Ill. May 5, 2003). "A product feature is functional ... 'if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.' Even if a product feature does not satisfy that definition, it can still be functional if it is a 'competitive necessity,' that is, if its exclusive use 'would put competitors at a significant non-reputation-related disadvantage.'" *Id.* at 419 (citation omitted) (quoting *TraFix Devices, Inc. v. Mktg. Displays, Inc.,* 532 U.S. 23, 32-33 (2001)); *see also Specialized Seating, Inc. v. Greenwich Indus., LP*, 616 F.3d 722, 727 (7th Cir. 2010) (explaining that a trade dress is functional when the product "looks the way it does in order to be a better [product], not in order to be a better way of identifying who made it.") "The question [in assessing functionality]

10

is not ... whether the claimed trade dress has less utility than alternatives, ... [but] whether the design feature affects the product quality or cost or is merely ornamental." *Arlington Specialties*, 847 F.3d at 420 (internal quotation marks omitted).

Several factors bear on whether a trade dress element is functional, including: "(1) the existence of a utility patent, expired or unexpired, that involves or describes the functionality of an item's design element; (2) the utilitarian properties of the item's unpatented design elements; (3) advertising of the item that touts the utilitarian advantages of the item's design elements; (4) the dearth of, or difficulty in creating, alternative designs for the item's purpose; [and] (5) the effect of the design feature on an item's quality or cost." *Bodum*, 927 F.3d at 492 (quoting *Ga.-Pac.*, 647 F.3d at 727-28). No single factor is dispositive, and courts consider each factor separately. *Id*.

***Plaintiff's trade dress does not have any design elements that have been subject to a utility patent***. The first factor clearly weighs in favor of non-functionality. Plaintiff has never filed for a utility patent for EVERICH TOY Toss and Catch Game Set as a whole, or for any element thereof. (Gu Decl. ¶ 13.)

***Plaintiff's trade dress provides no utilitarian advantage over alternatives.*** Plaintiff made deliberate design choice in creating EVERICH TOY Toss and Catch Game Set, which is intended to distinguish the EVERICH TOY Toss and Catch Game Set from other toss and catch game sets and to signify to the consumers that the product comes from Plaintiff. (*Id.* ¶ 11.) The specific features comprising Plaintiff's trade dress does not provide a utilitarian advantage over alternative designs. There are numerous ways to design a product that will function equally well. (*Id.*) The features of the EVERICH TOY Toss and Catch Game Set are "merely ornamental" and "not necessary to make the product work better." *Bodum*, 927 F.3d at 493 ("Whether it is more

11

advantageous for a French press to have a handle, however, is not the pertinent inquiry; the question is whether there is an advantage to having this designed handle ...").

     ***Plaintiff's advertising does not tout the utilitarian advantages of its trade dress features.*** Plaintiff has never advertised any utilitarian advantages of its EVERICH TOY Toss and Catch Game Set other than those features that holds true for most toss and catch game sets. (Gu Decl. ¶ 12.)

     ***A myriad of alternative designs exists to create a toss and catch game product.*** The existence of competing product designs indicates that the trade dress is non-functional. *See Logan*, 2003 WL 21011746, at *4 ("[I]t is appropriate at [the preliminary injunction] stage to consider the existence of alternative designs in the marketplace when determining whether product features are functional.") Here, alternate and non-infringing designs are not just available but are in wide use in the marketplace. (Gu Decl. ¶ 14.) As such, Defendants could use alternative designs without any disadvantage – other than the disadvantage of not riding on Plaintiff's goodwill.

     ***The features of the EVERICH TOY Toss and Catch Game Set does not affect quality or costs.*** Plaintiff did not select the features of the EVERICH TOY Toss and Catch Game Set for purposes of increasing quality or reducing costs. (*Id.* ¶¶ 9-10.) Plaintiff could have chosen alternative simplified designs that are less expensive to produce. (*Id.*) Furthermore, although EVERICH TOY Toss and Catch Game Set is made with high-quality materials, the particular design was not chosen to improve quality. (*Id.*) Defendants, for its part, could have selected any number of alternatives designs that would have worked equally well from a cost of goods and ease of manufacture standpoint but would not have provided the overall look and appearance that Plaintiff sought for its EVERICH TOY Toss and Catch Game Set.

/ / /

3.    *Consumers are likely to be confused.*

A defendant's product infringes the plaintiff's trade dress if the plaintiff shows that similarity of the defendant's trade dress to that of the plaintiff's creates a likelihood of confusion on the part of consumers as to the source of the goods.  15 U.S.C. § 1125; *Badger*, 13 F.3d at 1151; *Top Tobacco v. Fantasia Distribution Inc.*, 101 F. Supp. 3d 783, 788 (N.D. Ill. 2015).  Courts in the Seventh Circuit consider seven factors when analyzing the likelihood of confusion: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) actual confusion; and (7) intent of the defendant to "palm off" his product as that of another. *Top Tobacco*, 101 F. Supp. 3d at 789 (citing *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 643 (7th Cir. 2001)).  "[T]hough no one factor is decisive, the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the most important factors ..." *Ty, Inc,*237 F.3d at 898 (internal quotation marks omitted).

*Plaintiff's trade dress and Defendants' products are strikingly similar.*  The first factor clearly weighs in favor of a likelihood of confusion if the Plaintiff's and the Defendant's products outwardly are similar in appearance.  *See Badger*, 13 F.3d at 1152.  As discussed above, the visual similarities between the infringing products and the EVERICH TOY Toss and Catch Game Set are beyond question. As can be readily seen from an inspection of the infringing products, these products contain all of the design elements of the EVERICH TOY Toss and Catch Game Set.

*Plaintiff's products and the infringing products are similar types of goods.*  A Plaintiff's and Defendant's products are considered similar in type if the buying public would reasonably think they come from the same source, or are affiliated with, connected to, or sponsored by, the same source.  *Ty*, 237 F.3d at 900; *Top Tobacco*, 101 F. Supp. 3d at 790; *KJ Korea, Inc. v. Health*

13

*Korea, Inc.*, 66 F. Supp. 3d 1005, 1015 (N.D. Ill. 2014).  This factor is further supported if the plaintiff and defendant are in the same industry.  *Top Tobacco*, 101 F. Supp. at 790.  Here, the infringing products and the EVERICH TOY Toss and Catch Game Set comprise the same types of goods.  And the EVERICH TOY Toss and Catch Game Set and the infringing products are almost exactly the same and marketed to the same consumers looking for toss and catch game sets on Amazon.com.  Moreover, Defendants and Plaintiff are apparently in the same industry.  As such, the buying public is likely to think EVERICH TOY Toss and Catch Game Set and the infringing products are associated or originate from a common source.

**Plaintiff's products and Defendants' products are sold in the same area.**  For the third factor, courts consider the products' geographical areas of distribution; whether the products directly compete with each other; whether products are sold to consumers in the same type of store; and whether the products are sold through the same marketing channels.  *Top Tobacco*, 101 F. Supp. 3d at 790 – 91.  The area and manner of concurrent use favors a finding of likelihood of confusion if the products directly compete for customers.  *See Badger*, 13 F.3d at 1152.  Here, Plaintiff and Defendants target similar buyers and are directly competing with one another on the Amazon marketplace. *See Ty*, 237 F.3d at 900 – 01 (internal quotation marks omitted).  As such, this factor, too, weighs in favor of a finding of "likelihood of confusion."

**Consumers are not likely to exercise a high degree of care and discrimination in their purchase.**  Here, Defendants sell products that are almost exactly the same as EVERICH TOY Toss and Catch Game Set. Consumers searching for toss and catch game sets are less likely to exercise a high degree of care in their purchase when the products are generally indistinguishable from one another.  Furthermore, Plaintiff's products are inexpensive.  This factor thus increases the likelihood of consumer confusion.

**Plaintiff's trade dress is strong.**  To determine the strength of the plaintiff's trade dress, courts "examine the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular source." *Top Tobacco*, 101 F. Supp. 3d at 791.  Relevant evidence includes the amount of advertising and the volume of sales.  *See id.*; *KJ Korea*, 66 F. Supp. 3d at 1016.  Here, Plaintiff's trade dress is strong for all the reasons described above.  Indeed, the evidence assembled and recited in demonstrating that these goods have attained secondary meaning establishes, by corollary, the obvious strength of the trade dress and its resonance with the consuming public.  *See supra.*

**Defendants intended to palm off its products as EVERICH TOY Toss and Game Sets.** Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine Plaintiff products.  *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001).  As set forth above, the overlaps between Defendants' products and the EVERICH TOY Toss and Catch Game Set is remarkable and unmistaken given the limitless options available to design and manufacture a toss and catch game set, and yet, at every step of the way, Defendants consciously choose to mirror the look and feel of Plaintiff's trade dress.  Furthermore, Defendants' online stores use listing photos that are nearly identical to those of Plaintiffs so that they appear to unknowing consumers to be the source of or otherwise authorized to sell Plaintiff's products. Hence, the inescapable conclusion is that Defendants knowingly and intentionally sought out to copy the EVERICH TOY Toss and Catch Game Sets to deceive and mislead the public into believing that their products are sponsored, licensed, authorized by, affiliated, connected, or otherwise associated with Plaintiff.  Therefore, the final factor regarding Defendants' intent also weighs heavily in Plaintiff's favor.

For the reasons set forth above, and in particular the similarities of the product design, the clear intent of the Defendants to piggyback off Plaintiff's good will, and evidence of actual consumer confusion, Plaintiff has proved it has a reasonable likelihood of success on the merits for its trade dress infringement claim.

### 2. Plaintiff Is Likely to Succeed on Its False Designation of Origin Claim.

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) defendant used a false designation of origin in connection with products; (2) defendant's use of the products was in interstate commerce; and (3) there is a likelihood that consumers will be confused by defendant's false designation of origin. *Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990). The test to be used in determining whether a violation has occurred is whether "the evidence indicates a likelihood of confusion, deception or mistake on the part of the consuming public." *Id.* at 1205. This is the same test that is used for determining whether trademark infringement has occurred under the Lanham Act. *See Neopost Industrie B.V. v. PFE International, Inc., 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005)*; *see also Badger,* 13 F.3d at 1152 (applying the same factors in a trade dress case). Because Plaintiff has established a likelihood of success on the merits of its trade dress infringement claim against Defendants (*supra*), a likelihood of success on the merits for Plaintiff's false designation of origin claim is also established.

### 3. Plaintiff Is Likely to Succeed on its Illinois UDTPA Claim.

In Illinois, courts resolve unfair competition and deceptive trade practice claims "according to the principles set forth in the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994). Illinois courts look to federal case law and apply the same analysis to state infringement claims. *Id.* at 579 (citation omitted). The determination as to whether there is a

16

likelihood of confusion is similar under both the Lanham Act and the Illinois Uniform Deceptive Trade Practice Act. *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998). Because Plaintiff has established a likelihood of success on the merits of likelihood of confusion in its trade dress infringement claim against Defendants (*supra*), and the standard is the same under Illinois law, Plaintiff has established a likelihood of success on the merits for its Illinois Uniform Deceptive Trade Practices Act claim.

### 4. Plaintiff Is Likely to Succeed on its Federal Copyright Infringement Claims.

The evidence also establishes that Plaintiff is likely to succeed on its claim for copyright infringement. To establish a prima facie of copyright infringement, a plaintiff must prove two essential elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Pickett v. Prince*, 52 F.Supp.2d 893, 900–01 (N.D. Ill. 1999) (citing *Feist Publications, Inc. v. Rural Tel. Serv.*, 499 U.S. 340, 361(1991); *see also Atari, Inc. v. North Am. Phillips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982). The registration of a copyright certificate creates a prima facie presumption of ownership and validity of a copyright. *See* 17 U.S.C. § 410(c).

Here, Plaintiff has shown that it is the exclusive owner of the original, copyrighted images that Defendants are infringing and that it has complied with all statutory formalities and requirements in obtaining Plaintiff's Copyright. *See* Gu Decl. at ¶ 21. Without Plaintiff's knowledge or authorization, Defendants copied and publicly displayed substantially similar version of the photographs protected by Plaintiff's Copyright in connection with the marketing of its knock-off products. *Id.* Such use constitutes copyright infringement under 17 U.S.C. § 101, *et seq.*

17

**C. There Is No Adequate Remedy at Law and Plaintiff Is Likely to Suffer Irreparable Harm in the Absence of The Injunctive Relief.**

The Seventh Circuit has applied a presumption of irreparable harm in trade dress and copyright infringement suits. *See AM Gen. Corp. v. DaimlerChrysler Corp.,* 311 F.3d 796, 805, 831-32 (7th Cir. 2002) (recognizing, in a trade dress case, "the law's presumption that trademark dilution or infringement threatens irreparable injury for which there is no adequate remedy at law"). *Atari, Inc.,* 672 F.2d 607, 620 (7th Cir. 1982) (where copyright infringement has been established, there is a presumption that such infringement constitutes irreparable injury).

In trademark infringement cases in particular, irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendant's goods.' *Int'l Kennel Club of Chicago,* 846 F.2d at 1092.  As such, monetary damages are likely to be inadequate compensation for such harm.  *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979); *see also Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law).

If a TRO is not granted, Plaintiff will suffer loss for which there is no adequate remedy at law because: (1) Defendants' infringement connects the infringing products to a genuine EVERICH TOY Toss and Catch Game Sets by causing consumer confusion regarding source and affiliation; (2) Plaintiff has no control over the manufacturing or quality control of the infringing product – therefore, any quality problems related to Defendants' products would be attributed to Plaintiff, resulting in damaged goodwill and undetectable lost sales; and (3) the ongoing sale or

offering for sale of the infringing products by Plaintiff decreases the distinctiveness of the Plaintiff's trade dress.

As detailed above, Plaintiff has made substantial investment in – and succeeded in – establishing its significant reputation and goodwill in its EVERICH TOY Toss and Catch Game Set. In the absence of an injunction, Plaintiff will lose the value of that investment. The net result will be damage to Plaintiff in the form of lost profits and business opportunities, which amount cannot be measured or compensated by monetary damages alone. Furthermore, unabated infringement will encourage others to use Plaintiff's intellectual property without Plaintiff's permission.

In addition, Defendants have hijacked that reputation to sell competing products over which Plaintiff has no control. Trademarks identify their owners and in them resides the reputation and goodwill of their owners. Thus, if Defendants are permitted to infringe upon the Plaintiff's trade dress, Defendants are borrowing Plaintiff's reputation for its own goods, whose quality no longer lies within Plaintiff's control. A trademark owner's loss of the ability to control its mark, thus, creates a high likelihood for damage to its reputation. Plaintiff employs rigorous quality controls over its products (Gu Decl. ¶ 22), and yet Plaintiff has no control over the quality of Defendant's directly competitive infringing products. As close as Defendants' infringing are to Plaintiff authentic designs, Plaintiff would never release products with that inferior quality.

### D. **The Balancing of Harms Tips in Plaintiff's Favor**

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if temporary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer

if relief is denied. *Ty, Inc.*, 237 F.3d at 895. The potential harm to Defendants is insignificant as they will simply be prevented from willfully infringing Plaintiff's trade dress and from trading on Plaintiff's good will – actions that Defendants are never authorized to do in the first place. *See Ty*, 237 F.3d at 903 (when assessing the harm to the alleged infringer, "the court excludes the burden it voluntarily assumed by proceeding in the face of known risk.")

Furthermore, as willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted); *see also Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) (recognizing that in weighing balancing of harms, "the court excludes the burden [the defendants] voluntarily assumed by proceeding in the face of a known risk"). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of knock-off products. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### E. Issuance of the Injunction is in the Public Interest.

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop defendants from violating federal trademark law. *Eli Lilly & Co. v.*

*Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000) ("[T]he public interest is served by the injunction because enforcement of the trademark laws prevents consumer confusion.") Indeed, the gravamen of trademark protection is the right of the public to be free of confusion, along with the right of the trademark owner to control its reputation and its products' reputation; therefore, preventing Defendants from infringing Plaintiff's trade dress and other of Plaintiff's rights promotes the interests of the public.

## IV.    THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE.

The Lanham Act authorizes courts to issue injunctive relief "according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark… or to prevent a violation of [any right of the trade dress]." 15 U.S.C. § 1116(a). The Copyright Act authorizes the same nature of relief. *See* 17 U.S. Code § 502.

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Illegal Use of Plaintiff's Trade Dress Is Appropriate.

Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. For the reasons set forth above, this case warrants such relief.

Plaintiff requests *ex parte* a temporary injunction requiring the Defendants to immediately cease all use of Plaintiff's copyrighted images and trade dress, or similar variations thereof, on or in connection with the Defendant internet store and any related store. Such relief is necessary to stop the ongoing harm to Plaintiff's intellectual property rights, as well as loss of business good will and harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the Plaintiff's trade dress and copyright. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the

21

Internet, and this Court has recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc.*, 927 F. Supp. at 1077 (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers").   Plaintiff is currently unaware of the true identities and locations of the Defendants, as well as the scope and volume of Defendants' counterfeiting operation, nor how many other Defendant internet stores are used to sell and distribute the infringing products. (Gu Decl. ¶ 24.) Courts ordinarily authorize immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g.*, *Entm't One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 947 (N.D. Ill. 2019).

### B.  An Order Preventing the Fraudulent Transfer of Assets Is Appropriate.

Plaintiff also requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of the infringing products is not impaired or entirely lost.   Issuing an *ex parte* restraint will ensure Defendants' compliance.   If such a restraint is not granted in this case, Defendants are highly likely to disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered.   (Chen Decl. ¶ 3.)

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity.   *See Grupo Mexicano de Desarrollo, S. A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 325 (1999) (holding that asset freeze pending outcome of case is proper where plaintiff seeks equitable relief); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("[S]ince the assets in question ... were the profits of the [defendants] made by unlawfully stealing [the plaintiff's] services, the freeze was appropriate and may remain in place pending final disposition of this case.")

In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of their trade dress and copyright infringement claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), and Copyright Act 17 U.S.C § 504(b), Plaintiff is entitled to recover Defendants' profits. Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff. *Banister v. Firestone*, No. 17 C 8940, 2018 WL 4224444, at *9 (N.D. Ill. Sept. 5, 2018) (citing *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 13 C 07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013) (unpublished)).

Plaintiff has shown a strong likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to other unidentifiable or offshore bank accounts. Accordingly, an asset restraint is proper.

### C. Plaintiff Is Entitled to Expedited Discovery.

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351(1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The expedited discovery requested in Plaintiff's proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished).

More importantly, Defendants have engaged in many deceptive practices in an effort to hide their identities and accounts. (Chen Decl. ¶ 3, 7.) Plaintiff's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

### D. Service of Process by Electronic Means Is Warranted.

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests an order allowing services of process by electronically publishing a link to the Complaint, the Temporary Restraining Order, and other relevant documents on a website and by sending an e-mail to the e-mail addresses provided for the Defendants by third parties that includes a link to said website. Plaintiffs submit that providing notice via electronic publication and e-mail, along with any notice that Defendants receive from payment processors, is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Electronic service is appropriate and necessary in this case because, on information and belief, the Defendants: (1) provide incomplete and/or false names and physical address information to conceal their locations and avoid liability for their unlawful conduct; and (2) rely primarily on electronic communications to communicate with their customers and third party service providers,

24

demonstrating the reliability of this method of communication by which Defendants may be apprised of the pendency of this action. (Chen Decl. ¶ 7.) Authorizing service of process solely via e-mail and electronic publication will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously. (*Id.*) Absent the ability to serve Defendants in this manner, Plaintiffs will almost certainly be left without the ability to pursue a final judgment.

While offshore Internet store operators do not generally provide accurate physical addresses, they must provide a valid e-mail address to customers for completing payment and/or managing their Internet stores. (*Id.*) Moreover, it is necessary for merchants, such as Defendants, who operate entirely online, to visit their Internet store to ensure it is functioning and to communicate with customers electronically. As such, it is far more likely that Defendants can be served electronically than through traditional service of process methods.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Plaintiffs have good cause to suspect the Defendants are all residents of China. (Gu Decl. ¶ 24.) The People's Republic of China is a signatory to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Hague Convention"). According to Article 1 of the Hague Convention, the "convention shall not apply

where the address of the person to be served with the document is not known*." Id.* United States District Courts, including Courts in this District, routinely permit alternative service of process notwithstanding the applicability of the Hague Convention. *See e.g.*, *Gianni Versace, S.P.A. v. Yong Peng, et al.*, No. 18-cv-5385 (N.D. Ill. Feb. 27, 2019) ("Nor must Versace attempt service by contacting the Chinese Ministry of Justice, as suggested by [defendant]. The plain language of Rule 4 requires only that service be made as directed by the court and not prohibited by international agreement."); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("plaintiffs are not required to first attempt service through the Hague Convention."); *see also Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016) (authorizing alternative service pursuant to Fed. R. Civ. P. 4(f)(3); *Levi Strauss & Co., v. Zhejiang Weidu Garment Co., Ltd., et al.*, No. 16-cv- 7824 (N.D. Ill. Nov. 17, 2016) (same). The Hague Convention also does not preclude service by e-mail, and the declarations to the Hague Convention filed by China do not appear to prohibit e-mail service. (Chen Decl. ¶¶ 8-10, Exh. E) In addition, the law of the People's Republic of China does not appear to prohibit electronic service of process. (*Id.*)

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props.* 284 F.3d at 1014-15 (9th Cir. 2002). As the *Rio Properties Court* explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* Also, Courts have confirmed that the Hague Convention does not displace Rule 4(f)(3). *See Gianni*

*Versace, S.P.A. v. Yong Peng, et al*., No. 18-cv-5385 (N.D. Ill. Feb. 27, 2019) (citing *Nagravision SA v. Gotech Int'l Tech. Ltd*., 2018 U.S. App. LEXIS 2976 (5th Cir. 2018) ("Overlooking Rule 4(f)(3) entirely, Gotech argues that the service did not comply with the Hague Convention and Rule 4(f)(1)). This argument misses the mark because service was not effected pursuant to Hague Convention, and that agreement does not displace Rule 4(f)(3).") Finally, Court-directed electronic service pursuant to Rule 4(f)(3) is particularly appropriate in this case where "there is a need for speed that cannot be met by following the Hague Convention methods..." because of the injunctive relief sought by Plaintiffs. *Strabala,* 318 F.R.D. at 114 (N.D. Ill. 2016). As such, this Court may allow Plaintiffs to serve the Defendants via electronic publication and e-mail.

For the reasons set forth herein, Plaintiff respectfully request this Court's permission to serve Defendants via e-mail and electronic publication.

## V.    A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The amount of the security bond under Federal Rule of Civil Procedure 65(c) is in the discretion of the Court. *See Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972). The Seventh Circuit has determined that a strong likelihood of success is a major factor which could weigh heavily in favor of waiving a bond requirement. *Id*. Because of the strong and unequivocal nature of Plaintiff evidence of trade dress and copyright infringement, Plaintiff asks this Court to require Plaintiff post a bond of no more than ten thousand U.S. dollars ($10,000.00). *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.*, 2013 WL 1337616 (N.D. Ill. March 27, 2013) (unpublished) (setting $10,000 bond).

/ / /

/ / /

/ / /

## VI.    CONCLUSION

Defendants' counterfeiting operations irreparably harm Plaintiff's business including its hard-earned consumer good will. Without entry of the requested relief, Defendants' sale of infringing products and use of Plaintiff's protected images will continue to lead prospective purchasers and others to believe that Defendants' low-quality knockoffs have been manufactured by or emanate from Plaintiff, when in fact, they have not.

Entry of an *ex parte* order is necessary to protect Plaintiff's trade dress rights and copyrights, to prevent further irreparable harm to Plaintiff and the consuming public, and to preserve the status quo.  In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter the proposed order submitted concurrently herewith.

Dated: August 6, 2021                                Respectfully submitted,


                                                     */s/ Edward Chen*
                                                     Edward Chen (CA Bar No. 312553)
                                                     YK Law LLP
                                                     125 South Wacker Dr. Suite 300
                                                     Chicago, Illinois 60606
                                                     (213) 401-0970
                                                     echen@yklaw.us

                                                     *Attorneys For Plaintiff*
                                                     *Yomee Toys (Shuyang) Co., Ltd*

28

### CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

By:   */s/ Edward Chen*
         Edward Chen