IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YOMEE TOYS (SHUYANG) CO., LTD<br><br>        Plaintiff,<br>  v.<br><br>SHENZHEN MEISHANG BAOKANG E-COMMERCE CO., LTD, d/b/a Jalunth and DOES 1-50, inclusive,<br><br>        Defendants. | Civil Action No.: 1:21-cv-03939 |

### DECLARATION OF EDWARD CHEN

I, Edward Chen, hereby declare as follows:

1. I am Senior Counsel with YK Law LLP, and I serve as counsel for Plaintiff Yomee Toys (Shuyang) Co., Ltd ("Plaintiff") in the above-named action. I am admitted to practice before the United States District Court for the Northern District of Illinois. I make this Declaration in Support of Plaintiff's *Ex Parte* Motion for TRO, Asset Restraint Order, Expedited Discovery Order, and Service of Process by Electronic Means Order. Except where otherwise stated, the following statements are made upon personal knowledge and if called upon to testify, I would and could testify competently thereto.

2. Defendants have targeted sales to Illinois residents by setting up and operating Amazon stores that target United States consumers, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold infringing products to residents of Illinois. True and correct copies of the invoices confirming payment and orders of the infringing products from each of the Defendants is attached hereto as **Exhibits A, B, and C.**

3. On information and belief, counterfeiters such as Defendants often go to great lengths to escape any legal redress, unless their U.S.-based assets generated by the infringing sales are restrained. Defendants will often permit cases to go to default unless their assets are restrained because they know the brand owners will not be able to collect on the judgment in China.

4. Monetary damages cannot adequately compensate Plaintiff for ongoing infringement because monetary damages fail to address the loss of control of and damage to Plaintiff's reputation and the goodwill associated therewith. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to Plaintiff's reputation and the goodwill associated therewith by acts of infringement.

5. The use of the trade dress and copyrighted images in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Plaintiff is causing and likely will continue to cause consumer confusion, which weakens Plaintiff's brand recognition and reputations and diverts sales. Consumers who mistakenly believe that the infringing products he or she purchased originated from Plaintiff will likely come to believe that Plaintiff offer low-quality products. Inferior quality products will likely result in increased skepticism and hesitance in consumers presented with genuine products, resulting in a loss or undermining of Plaintiff's reputations and goodwill, which can further result in a loss of future sales and market share, and the extent of harm to Plaintiff's reputations and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

6. An immediate restraint of Defendants' listing and sales of the infringing products is crucial to stopping this intellectual property infringement.

7. Usually, offshore Internet store operators offering for sale products using counterfeit trademarks will provide incomplete and/or false names and physical address information to conceal their locations and avoid liability for their unlawful conduct and will also often rely primarily on electronic communications such as e-mail to communicate with their customers and their third-party service providers. In my experience in anti-counterfeiting investigations, even if a purported address is provided on an Internet store, it is usually not legitimate. E-mail has proved to be a reliable mechanism for quickly providing notice to defendant Internet store operators in similar cases.

8. China is a signatory to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters ("Hague Convention"), which I have reviewed. The Hague Convention does not preclude service by e-mail, and the declarations to the Hague Convention filed by China do not appear to expressly prohibit e-mail service. Moreover, according to Article 1 of the Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." A true and correct copy of the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters, and a list of signatory members, are collectively attached hereto as **Exhibit D.**

9. Given our firm's strong connections and working relationship with the Yingke Law Firm, the largest law firm in China, we have the privilege of utilizing thousands of local attorneys, investigators, and other business contacts throughout the Asia-Pacific region, namely all throughout Mainland China. In connection with our investigation of Defendants in this matter, we requested our affiliates with the Yingke Law Firm in China perform address searches for the addresses listed by Defendants as displayed on their Amazon Storefront accounts. For example, the address provided for Defendant Shenzhen Meishang Baokang E-Commerce Co., Ltd,

"Nanshanqu Nantoujiedao Bianjianxiaoqu 1 Dong 30, Shenzhen, Guangdong, 518000, CN" is incorrect and/or not occupied by the persons affiliated with, or in control or ownership of the Amazon Storefront account Jalunth. Given the false addresses displayed by Defendants, the actual physical location of said Defendants is currently unknown, thereby warranting electronic service. A true and correct copy of the memorandum detailing the results of our investigation is attached hereto as **Exhibit E.**

10. I have researched whether the issuance of an order to serve process upon the Defendants by electronic mail pursuant to Fed. R. Civ. P. 4(f)(3) is contrary to or likely to offend the law of the People's Republic of China. I located an English language version of the Civil Procedure Law of the People's Republic of China (Revised in 2017). A true and correct copy is attached hereto as Exhibit 2. Chapter VII, Section 2, of the Civil Procedure Law governs service of process. I am informed and believe that the law does not preclude the service of process by e-mail and allows for alternate service of process in certain circumstances. As an example, Article 92 of the Civil Procedure Law provides that, if the whereabouts of a recipient of the service is unknown, or if a document cannot be served by the other methods reflected in the law, a document shall be served by public announcement, which would undoubtably be less likely to reach a defendant than service by e-mail. Also, pursuant to Articles 87 and 267(7), in certain circumstances a documentmay be served by way of facsimile or electronic mail.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on August 6, 2021 at Los Angeles, California.

>                     */s/ Edward Chen*
>                     Edward Chen